Good morning, your honors, Nicholas Hart for the appellant Kevin Gould. The issue before the court today is whether there was personal jurisdiction for Crystal Financial, which was a senior secured lender for One Aviation in Albuquerque, New Mexico. Michael Wyse and Wyse's advisors, when they hired Kevin Gould to work for One Aviation in Albuquerque, engaged in communications with Mr. Gould while he was carrying out that work and made promises to guarantee compensation for services that he provided that benefited Crystal Financial and the other senior secured lender, DW Partners, while he worked for One As a preliminary matter, I think it's important to note that Mr. Gould's claim against Crystal Financial and Wyse and Wyse's advisors is not an attempt to enforce the employment contract which he had between himself and One Aviation, rather it's seeking to remedy material misrepresentations and also to enforce an oral contract that was entered into between himself, DW Partners, and Crystal Financial when he made clear to those senior secured lenders that he would be unwilling to move to New Mexico and work for One Aviation unless the senior secured lenders guaranteed some type of payment for his services because after all the purpose of those services was to help One Aviation be sold and to benefit the senior Crystal and Gould, did they take place prior to Gould actually being in New Mexico? Yes. Okay. So the negotiations between Crystal and Gould did occur prior to New Mexico but it was always understood that what would be required as a result of those negotiations was that Mr. Gould would have to move to New Mexico and work to turn around One Aviation so it could then be, so the secured debt position could later be sold for some type of profit. And to be clear, as a legal matter, is there any adverse impact to your argument that in fact those communications did not involve direct contacts between Crystal and New Mexico in the sense of them calling Gould in New Mexico when he was there? So I don't think that there's an impact because we can't look at just those negotiations in a vacuum of what happened. There are communications. Well, I want to focus on those for the moment. Take those in isolation and what is your view of the legal import of those? If all we're talking about is the negotiations that Crystal had with him before he made the move, and I think they were both in October or something like that, before he made the move, if you were stuck with that only, could you make an argument that that in itself provided a foundation for Crystal to have personal jurisdiction? If I was stuck with that only, Your Honor, I think that would be a much more difficult question because the contact there would be that the understanding between the parties was that the work was then going to be performed in New Mexico and the benefit that was received from that work would be derived from work in New Mexico. So there still is some contact, but I do agree partially. I'm not advocating anything. I do agree partially that if that's all I had, Your Honor, that's a much more complicated case than what we have here, which is that after those negotiations, Mr. Rule did actually move to New Mexico. After he moved to New Mexico, there were continued communications between Crystal Financial and Michael Wise and as well as an advisor at Wise Advisors. We also have allegations in the complaint because this is at the motion to dismiss stage, so we are just dealing with the factual allegations in the complaint and an affidavit in support of the response in opposition to the motion to dismiss. So there are factual allegations that Michael Wise was serving as an intermediary for Crystal Financial and the other senior secured lender, DW Partners, in their interactions with Mr. Gould in discussing these compensation terms because what shows in the complaint is that Mr. Gould did move to New Mexico before a contract was officially signed with One Aviation, so conversations regarding his compensation, including his insistence that DW Partners and Crystal Financial guarantee some type of compensation for him from the sale of their senior secured position, Mr. Gould was in, but did have some continuing discussions once he did go to New Mexico. There were also multiple discussions between Mr. Gould and Mr. Wise, again, serving in his role as Wise Advisors in this, where there's a discussion purely of- When you say serving in his role as Wise Advisors, are you talking about your agency argument that you're making? Because that's what I see as your primary argument as to why there's jurisdiction over Crystal Financial is because you're arguing that Wise was somehow involved even though he's Board of Directors, Chairman of the Board of Directors, he's also somehow an agent of Crystal. Is that right? That's correct, Your Honor. That is part of the argument. But how do you get there? You're talking about some kind of a parent agency? Yes. But doesn't agency depend on what the principle represents that the agent's duties are or obligations are? A parent authority and agency does depend on the principle, but New Mexico law also says that the principle's actions can be shown through silence or through acquiescence. There does not have to be an explicit statement under New Mexico law or a specific act of the principle. They're acquiescence to what was happening because there are facts throughout this that Mr. Gould, after talking with Mr. Wise, would then go talk to Crystal Financial and Crystal Financial, specifically Matt Governale, would have an understanding, would know everything that he was talking about related to compensation previously with Mr. Wise. There is evidence that he is serving as that in-between, that he is relaying these communications. What are your non-conclusory statements? Because that's what you really need is some non-conclusory statements about that role that you say he was serving other than his apparent role as acting for the corporation on behalf of the board, which would seem to be his apparent role in negotiating the contract. What do you have other than conclusory allegations of this agency relationship? The allegations related specifically to this are found in pages 5 and 6 of our gray brief in the reply brief where it does talk about how the complaint does allege that the promises were made on behalf of the senior security. That's a conclusory allegation. Right. When you've got Mr. Wise, member of the board of directors, negotiating and actually entering into a contract with this plaintiff, with Mr. Gould, what do you have besides some sort of conclusory statement that somehow he was acting in some other capacity? To me, the strongest part of both the affidavit and the complaint is the statement that Michael Wise had made to Mr. Gould that he didn't control the purse strings. This is showing some type of operation on behalf of Crystal Financial and DW Partners. It makes no sense when we're looking in the light most favorable to the plaintiff and to jurisdiction that a statement such as that is that the chairman of the board of a company is saying that he has no control over paying an employee of that company a bonus. I think when you look at that specifically... What point was this statement made? Was it made during the negotiations? This is after the negotiations. What happens... After the contract and after they didn't pay? What happens is that while Mr. Gould is working at One Aviation, the debt position starts to be sold. As the company is heading towards bankruptcy, Mr. Gould is continually reaching out to Mr. Wise, to DW Partners, to this group outside of One Aviation saying, we're heading towards bankruptcy. This company is being put into bankruptcy. You all guaranteed that this payment would come from the sale of the senior secured lending position. He's trying to make good on that. In that conversation, Mr. Wise says, I don't control the purse strings to be able to pay that, which is, to me, an indication that he's not acting in his role as the chairman of One Aviation because, again, it wouldn't... Let me follow that argument. That's an indication that he is not acting in his role as chairman previously when he negotiated the agreement, when he made these oral promises that you're talking about. The oral promises are not solely made through Mr. Wise. The oral promises do include conversations with other, with the senior secured lenders. I'm focusing on Crystal now. I'm focusing on whether the comments that were made... Mr. Wise was one of the people we're talking about who was negotiating with Mr. Gould prior to him coming, right? That's correct. One line of argument will be that when he was engaged in that negotiation, he was not acting as chairman. He was acting as an agent of Crystal. I guess what I'm saying is, if your strongest piece of evidence that he was, in fact, an agent for Crystal comes later in the story, then what you would be asking us to do is infer from that, I don't control the purse strings, that at the time of the earlier negotiation, he also was operating in a posture of an agent, right? So that is correct, Your Honor, because what the complaint does allege and what the affidavit talks about in much more detail is that Crystal Financial and DW Partners were involved in the discussions related to Mr. Gould's compensation before he moved to New Mexico. And the finalization of that was then done with Mr. Wise once Mr. Gould was in New Mexico and started operating. In the affidavit, in the response to the motion to dismiss, and in the complaint, it does talk about conversations with Matt Governale, who is an employee of Crystal Financial, related to compensation. And it does, in detail, describe the involvement of the other senior security lender who is still before the district. After he was in New Mexico, after Mr. Gould was in New Mexico. There are conversations both before and after, Your Honor. But in the before conversations, was there reference to the bonus? Reference to the what, I'm sorry? Bonus? Yes. Because part of Mr. Gould's discussion with Crystal Financial and the other senior security lender was that he could not take on this position, that he was unwilling to Yes, the senior security lenders were willing to carve out some compensation that would come from them so that he could be protected in bankruptcy. In fact, prior to the move, prior to this negotiation and the move, Mr. Gould was a consultant for Crystal Financial. So he was already involved in the process. And the question was, how could we get, the question was, for Mr. Gould, you know, what needed to be done in order to get him to take a permanent role, a full-time role inside of One Aviation. And that included these discussions over the bonus. In terms of the argument that Mr. Wise was acting outside of his role as chairman when he was negotiating with Mr. Gould, what would be the strongest case that you would present to us that I can return to in evaluating your argument? So the strongest case as far as during the negotiations, I think, also includes DW Partners, where at the same time that Mr. Gould is talking with Wise, he's receiving text messages from John Buck, who is an employee at that senior security lender, like I said there before the district court, saying, you know, signing bonus is out, is out of the question. The specific text messages related to these negotiations pushing Mr. Gould towards accepting what is referred to as a transaction bonus, accepting a portion of the sale rather than a signing bonus. Well, that's helpful as a factual matter. What I was thinking about, and so that's helpful, I'm glad to know that, but what I was thinking about is judicial decision when I use the word case. What's the strongest case that I can look to to provide guidance on this particular question? On whether... Whether Mr. Wise was acting outside the role of chairman, but rather was acting as an agent of Crystal when he was engaged in those negotiations with Mr. Gould. So the case that we do cite in our brief, Your Honor, is the Vickers case, which...  Vickers, V-I-C-K-E-R-S. Okay, got it. It's on page five of the Gray Brief, 607p2603, and that talks about how under New Mexico law, that the apparent authority that's needed, the actions of an agent, doesn't always require some explicit or obvious action because silence or acquiescence can demonstrate apparent authority under New Mexico law. This... We admit this is different than some other states and some of the other cases that are cited by Crystal Financial and by Wise in their briefs, but the issue here is applying New Mexico law, you know, to this substantive issue. And under New Mexico law, it does state that if a principal puts one into or knowingly permits him to occupy a position in which, according to the ordinary experience and habits of mankind, it is usual for the occupant to have authority of a particular kind, anyone dealing with one in that position is justified in affirming that authority. So as far as the agency action, that's what we're relying on. Isn't there also some language in the contract, I don't have it in front of me, but some language that indicates that Mr. Gould basically affirms that he's not relying on anything, any representations outside the contract, that what you see in the contract is what you get? Right, but I think that... Doesn't that go against his argument of agency or does it have anything to do with it? I don't know. I don't think that it goes against his argument as to the senior secured lenders because the senior secured lenders are not party to that contract. So that's specifically the contract that's being... But he is saying he relied on their representations now to basically enter into that contract, right? So what he is saying is he relied on their representations to agree to take this position and to enter... Well, to enter the contract, which says he can't rely on anything other than what's in the contract. My reading of that, Your Honor, is that that would certainly apply to one aviation. He wouldn't have been able to force one aviation to take a certain action that wasn't engaged, that wasn't described in that contract, but that's not what he's trying to do here. What he's talking about is that outside of his employment contract with one aviation, there was this discussion of a guarantee, a discussion and a promise that he would receive some type of portion of the transaction sale so that he would be protected should the company go into bankruptcy. So... What was in the contract about the percentage that he would receive? So the contract laid out a sliding scale of percentages. There are disputes amongst the parties about what the actual... But he was there. At this whole point, it's all in the contract. It's all in it. He signed off. And he said, yeah, I'm agreeing that this is the percentage I'm going to get. It's a sliding scale. And this is how it's going to be determined. So I'm still trying to see how he could now say, oh, nevertheless, I was relying on some representations outside the contract because it's in the contract. Because he's not relying on representations of one aviation that are outside the contract. One aviation is the party to the contract. What he is talking about is separate agreements that he needed in order to enter into that contract and go and work for one aviation. There's entirely the possibility that one aviation never went into bankruptcy. He was not optimistic that that wouldn't happen. But outside of the agreement that he had with one aviation, absent some type of language that he was saying that he agreed that all promises from others, that from Crystal Financial or from DW Partners were no longer in effect because the contract was the only thing that controlled, I don't think that that contract language is enough to prohibit him from trying to, one, enforce the contract, but also there are tort claims for misrepresentations in this case. It's not just the oral contract. And help me with this, to what extent do the merits interact with our jurisdictional determination here? In other words, can't there be contacts that have taken place that nevertheless, at the end of the day, there will be no merits-based argument that those contacts have significance for purposes of the claims that are being brought here? So there are, there is certainly some interplay. In this case, the district court did not proceed to the 12B6 portion of the motion to dismiss. No, but I mean, as it relates to the jurisdiction, what is the interplay? I mean, to the extent that one were to say that, you know, you're going to lose, you know, at the end of the day on your arguments, does that defeat also the claim that there were jurisdictional contacts related to the claim? My best response to that right now, Your Honor, is that the district court determined, as for DW Partners, that the claims were allowed to go forward. There was not just a finding of personal jurisdiction, but the negligent misrepresentation and the oral contract claims against DW Partners are currently proceeding. The cases stayed pending this appeal, but we had gone through discovery and the district court had found that there was sufficient facts to move forward on those claims below. With that being said, Your Honors, I took more than my fair share of time before, so I'll just ask that the district court be reversed in their finding that there is personal jurisdiction for Crystal Financial, Weiss, and Weiss Advisors. Thank you. Thank you, Counsel. Good morning, Your Honors. May it please the Court. Jocelyn Drennan on behalf of the Weiss Defendants. Mr. Gould set his own standard for establishing personal jurisdiction by choosing to sue Michael Weiss in his individual capacity, Michael Weiss and his Weiss Advisor, LLC, managing partner capacity, and Weiss Advisors, LLC itself. The district court accordingly reviewed the allegations in the complaint and Mr. Gould's 12B2 briefing in evaluating whether he had provided a well-pleaded factual basis for the court to exercise personal jurisdiction over the Weiss Defendants. The district court correctly concluded that he had not. Mr. Gould's appellate briefing does not show otherwise. He does not directly address the district court's reasoning in his opening brief and his arguments in his reply brief do not help him. He relies on various new arguments in his reply brief regarding the Weiss parties beginning on the first page. He asserts that Mr. Weiss, in his individual capacity through Weiss Advisors, made promises that gave rise to an oral contract to pay Mr. Gould's transaction bonus. Mr. Gould provides no factual or legal basis for treating Mr. Weiss and Weiss Advisors, LLC, as one in the same. There is no oral contract theory in this case. If the court reviews Mr. Gould's 12B6 briefing, in that briefing in addressing the contract allegations, he asked the court if the court found his allegations insufficient to allow him to amend the complaint to add implied and fact allegations. The oral contract theory is a new argument that is being raised for the first time on appeal, and as such, it is being raised too late. In his remaining- You mentioned individual capacity, and bear with me for a minute as I play this out. But the district court seemed to rely upon drawing a distinction between Mr. Weiss contacts that involved him operating in his individual capacity from operating in any other capacity and trying to discern whether there was personal jurisdiction, and relied upon, in this case, 10 Industrial Park versus Western Plains, I think, in making this argument. What struck me is that I think it's the fiduciary shield or argument of that sort was the doctrine that's at play there. In Newsom versus Gallagher, which is an important case of personal jurisdiction, we dealt with 10 Industrial Park, and we said that that doctrine is a doctrine of state law. It's not a doctrine of federal law, and we attached it to Wyoming law in that case. So the question here would be, I know that the other side didn't make this argument, and so I'm just trying to understand how it should play here, because the district court, why does individual capacity, why does that lens even drive our evaluation of Mr. Weiss's personal jurisdiction when, one, Newsom versus Gallagher says that fiduciary shield doctrine is not a doctrine of federal law, so you have to look at state law to determine whether it's applicable, and two, there's no indication that New Mexico, or at least there's no indication that's been briefed, that New Mexico applies that doctrine at all. And if New Mexico doesn't apply that doctrine at all, then that lens is not the right lens through which to view this matter. Well, I think, Your Honor, are you finished with your question? I am finished. Please, respond. I think that the distinction in this case arises because of the way that Mr. Gould chose to define or shape what he meant by individual capacity. He very clearly stated in the complaint that he was not suing Mr. Weiss in his board capacity, and I think that the... I'm sorry, he wasn't suing him, Helen? What did you just say? I couldn't hear you. I'm sorry. Oh, I can... In his board. I'm sorry, I can take my mask off. In his board capacity. Okay. He very clearly stated in the complaint that he was not suing Mr. Gould, excuse me, Mr. Weiss in his board capacity, and he's seeking instead to predicate jurisdiction over Mr. Weiss and his individual capacity based upon things that Mr. Weiss allegedly did outside of his board capacity, something that wasn't in furtherance of the interest of one aviation. All right, but I think what Judge Holmes is saying, as I understand, and I had the same question, is the district court relied on this 10-mile industrial park case where we specifically discussed the fiduciary shield doctrine, and that seems to be the basis for the district court's decision, even though he didn't call it that. He cites that case where we were applying Wyoming law. It's a state law doctrine. You don't apply any minimum context. You don't get to the constitutional issue. It's a state law doctrine, and so what I think Judge Holmes is suggesting is can we assume that the district court knew what New Mexico law was here and that New Mexico does apply the fiduciary shield doctrine? It wasn't briefed, but that is essentially what the district court relied on, and that may be true. It may be accurate, in which case you don't ever look at it. You don't have personal jurisdiction over the court. I think Judge Johnson is aware that New Mexico, there's no case law clearly recognizing the fiduciary shield doctrine. How do we know that? How do we know that Judge Johnson is aware of that? He has another opinion. I'm sorry. I don't have the site handy. Smith v. Cutler, in which he refers to a case by the New Mexico Court of Appeals, Santa Fe Technologies v. Argus Networks, and I think that Judge Johnson referred to Ten Mile just to make the point to Mr. Gould, you have not shown me anything factually. You have not provided me a factual basis to believe that Mr. Weiss was acting outside of his board capacity. So I think it was just a way of the judge was saying, you haven't shown me anything that he did that I can say he did independent of his board capacity. Mr. Weiss, again, set the terms. If he didn't, wasn't the court suggesting that if he didn't do this in his individual capacity, if he did it as a corporate representative, then there is no personal jurisdiction question. He's protected, essentially. Isn't that what the court was saying? Because that's what we said in Ten Mile Industrial Park. I'm sorry, Your Honor. I think the judge was trying to say, I don't see anything factual upon which I can premise jurisdiction upon Mr. Weiss in his individual capacity because you haven't provided me anything factually showing that he was acting outside of his board capacity. And again, Mr. Weiss chose to sue him in his individual capacity. He disclaimed any intention to sue him in his board capacity, in his chairman of the board capacity. True. I'm sorry. I didn't mean to cut you off. But the legal import of that distinction between board and individual capacity only really has meaning if you apply the fiduciary shield doctrine because even if you do not, if it does not apply, at least one argument, maybe not definitive, but one argument is even if Mr. Gould is going after Mr. Weiss individually for personal jurisdiction purposes, he can count the board contacts. In other words, even if he's not going after him for board purposes, he can count those contacts to establish personal jurisdiction. Your Honor, I respectfully disagree. I think Mr. Gould forfeited that argument by not making it. Well, that's what I'm waiting to hear. So I want to hear whether that's your position. Our position is he forfeited that argument, but our position is also that was not his theory of jurisdiction over Mr. Weiss in his individual capacity. He was not predicating jurisdiction over Mr. Weiss in his individual capacity on anything that he said or did as chairman of the board of One Aviation. He walled that off. And I'm sorry. I think he's stopped from now coming back and changing horses at the 11th hour. In his remaining minimum contacts arguments, he makes four attempts in his reply to try to establish jurisdiction over Mr. Weiss in his individual capacity. Communications by the senior secured lenders, not by Mr. Weiss. The requisite minimum contacts for Mr. Weiss cannot be predicated on the acts of another party. There are conversations where Mr. Weiss repeatedly, allegedly assured him that he and the senior secured lenders would take care of Mr. Gould. Those occurred during business trips. There's no oral contract. In this case, Mr. Weiss only signed the contract employment agreement in his board capacity. There are allusions to the numerous phone calls and conversations, nothing factual there showing that those communications occurred out of Mr. Weiss' board capacity. I need to yield the rest of the time. Okay, please, the court. My name is Ross Crown. I represent Crystal Financial LP in this appeal. Mr. Gould alleges that the court has specific personal jurisdiction over Crystal as to both his contract and tort causes of action. We believe that the district court properly found a lack of sufficient contacts between personal bonus and cannot establish, and therefore Gould cannot establish personal jurisdiction, specific personal jurisdiction against Crystal. Mr. Weiss called Mr. Gould before he came to New Mexico, at least according to the allegations of the complaint, and had conversations with him about his prospective employment. Is that right? That's my understanding. Okay. And is it your view or not that when those communications took place that Mr. Weiss was acting in his capacity, well, as an agent of Crystal, among other things? No, Mr. Weiss was never an agent of Crystal. Crystal denies that. And what in the complaint would you draw upon to support your argument that he was not acting as an agent of Crystal? Because in that conversation, he talked about prospective employment in New Mexico, or according to the complaint, prospective employment in the affidavits, prospective employment in that employment would be, and also a bonus. And so if that were the case, these are acts that he was undertaking with the notion that they would impact New Mexico. So what is it that you would draw upon to say that your client was not implicated in those conversations? Well, Mr. Weiss was a member of the board of One Aviation, so he had his own interests as a board member in trying to do what he thought best to try to turn around the fortunes of the company, and that included attempting to hire Mr. Gould as the COO. That doesn't make Mr. Weiss Crystal's agent because they shared some commonality of interest in trying to turn this company around. That's true. But at least I detected from the briefing and from looking at the record that Mr. Gould was of the view that given the fact that he was brought in to address an ailing company anyway, that he didn't want to rely entirely upon the fate of that ailing company, and therefore he wanted representations that, from the lenders, that he would get a cut from them. And so if that's the case, why wouldn't Mr. Weiss, if he were situated to make those representations to Mr. Gould, not, in fact, be pursuing also the interests of Crystalloy Crystal? Well, again, I mean, they had a commonality of interest. I don't know. I mean, if Mr. Gould wanted representations from the senior secured lenders, especially Crystal, that they would guarantee as a bonus, then that request should have been made of Crystal. And who would he be talking to at Crystal to get those representations? Well, the record shows he had conversed with two officers of Crystal, Matt Governale and Michael Pizzet, but none of the conversations he had with those officers had anything to do with payment of his transactional bonus. So, I think there's, it's important to recognize certain facts about the case. Mr. Gould was a resident of California until October 23rd, 2017, when he moved to New Mexico. The only transaction that involved Crystal, upon which his claim for an alleged bonus is based, closed on November 1st, 2017, which was one week after Mr. Gould relocated to that, to the state. On that date, November 1st, 2017, Crystal's entire position in One Aviation was purchased. And after that date, Crystal had no financial stake in One Aviation whatsoever. So nothing that Mr. Gould did after November 1st, 2017, was in furtherance of any interest of Crystal. Now, I will say the record is a little bit ambiguous. The complaint alleges that Crystal sold 25% of its loan on November 1st, 2017. And Judge Johnson, in his memorandum of opinion, recited that allegation. However, the declaration that was subsequently submitted by Mr. Gould corrects the misstatement made in the complaint and indicates that Crystal held 25% of One Aviation's senior secure debt. And that full 25% was paid by the transaction occurring on November 1st. So at that point, anything that happens after November 1st had nothing to do with Crystal. It's important to note other facts that are clear from the record. Michael Weiss was never an employee, an officer, or partner of Crystal. John Buck of DW Partners was never an employee, officer, or partner of Crystal. The Gould declaration, which he was forced to submit because his complaint was so threadbare and it made allegations solely against defendants as a group without attempting to distinguish among them, his declaration is 32 pages long. I assume it was his best effort to provide all the detail he could. Paragraph 16 of that declaration lists 120 interactions involving Mr. Gould and representatives of either Weiss, Advisors, DW Partners, or Crystal. Out of those 120 interactions, only 11 of them occurred between Gould and a representative of Crystal. None of those 11 interactions include any communications having anything to do with Gould's claim for a transaction bonus. And the dates of the interactions with Crystal are from August 8th, 2017 to October 27th, 2017. So only the very last one of those 11 interactions took place after Mr. Gould even moved to New Mexico. So I don't think there's any way, based on these meager contacts, that Mr. Gould can establish any kind of minimum contacts between Crystal and the state of New Mexico. Is it determinative or dispositive that a connection would take place either before or after he moved to New Mexico? Couldn't it well be the case that you could have contacts between Mr. Gould and Crystal before he moved to New Mexico and have them have import for the personal jurisdiction of Crystal? Well, I don't, you know, Mr. Gould was not in New Mexico at the time he communicated directly with Crystal, except, as I said, the very last communication. Well, how about Dudnikoff and Newsom? Both of those cases involved situations where there were contacts taken with the understanding that they would have an impact in a state, but those contacts didn't necessarily involve or those actions didn't involve anything directly happening in that state. I mean, think about Dudnikoff, for example, where they communicated with eBay about a sale, you know, an auction that was going to take place in Colorado. That communication initially wasn't with Colorado. Well, I think it's important that the communications didn't take place in New Mexico. Now, whether they're completely irrelevant, I don't, I can't say that, but they had nothing to do with the transaction bonus either. The communications had to do with general financial state of One Aviation, and any communications, well, there were no communications related to the transactional bonus, and I think they have to draw that link. I do want to say that, well, about the contract, and I guess I'm running out of time here. The contract does have an integration clause, which refers to not only understatings with the company, but any of its officers, directors, representatives. So I think to the extent that Mr. Gould is relying on representations of Mr. Wise, those would have fallen within the integration clause. And I don't think there's any facts to show an agent relationship between Gould and Wise. If I could just conclude, because I'm at the very end of my time, even if the court were to find that there may be some remote contacts between Crystal and the State of New Mexico with respect to this matter, I don't think it meets the requirements of fair play and substantial evidence. New Mexico has very little interest in resolving the dispute between Gould and Crystal. Mr. Gould is no longer even a resident of New Mexico, and during the time that Gould was a resident of the State of New Mexico, he had only one communication with Crystal and no communications after he was in the State for more than one week, because Crystal had no further interest in one aviation one week after Mr. Gould arrived in the State. Thank you, counsel. Cases, I understand that you waived your rebuttal, or are you going to take those few moments you had? It was 10 seconds, Your Honor. All right. Cases submitted, then. Thank you, counsel. Thank you.